[Cite as *State v. Brooks*, 2016-Ohio-7025.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 28070 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY W. BROOKS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 15 07 2345 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Anthony Brooks, appeals the judgment of the Summit County Court of Common Pleas denying his motion to suppress. For the reasons set forth below, we affirm.

I.

{¶2} Officer David Holzapfel is an 11-and-a-half-year veteran of the Cuyahoga Falls Police Department and has been a K-9 handler for eight of those years. As such, Officer Holzapfel always has a K-9 with him while on duty. Officer Holzapfel was on duty during the early morning of July 16, 2015. At the time, a K-9 named Diesel was located in the backseat of his cruiser. Diesel is a narcotics searching K-9 that is trained to detect the presence of methamphetamine, heroin, cocaine, and marijuana, or any derivatives of those drugs.

{¶3} At roughly 12:55 a.m., Officer Holzapfel pulled his cruiser into a gas station located at the intersection of Howe Avenue and Main Street in Cuyahoga Falls. Upon pulling

into the gas station, Officer Holzapfel observed a tan Chevy Impala with only one functioning headlight. Officer Holzapfel followed the vehicle as it pulled out of the gas station, turned right onto Main Street, and then immediately turned left onto Howe Avenue. However, while turning out of the gas station and onto Main Street, the vehicle crossed over two lanes, in violation of city ordinance, and immediately drove into the far left-turn lane of traffic. While following the vehicle, Officer Holzapfel ran the vehicle's license plate and learned that the vehicle was registered to Anthony Brooks. Officer Holzapfel recognized Brooks' name, as the Summit County Drug Unit had recently informed him that Brooks might be involved in drug-related activity. Based on the two aforementioned traffic violations, Officer Holzapfel decided to stop the vehicle.

{¶4} Upon effectuating the traffic stop, Officer Holzapfel called for backup. While the backup officer was en route, Officer Holzapfel established contact with the driver, who was identified as Anthony Brooks. Officer Holzapfel also immediately noticed numerous air fresheners inside of the vehicle, including eight or nine air fresheners hanging from the rearview mirror and at least one air freshener in every dashboard vent. Officer Holzapfel then returned to his cruiser and began writing Brooks a citation for his traffic violations. While writing out the citation, Officer Holzapfel searched several court websites on his cruiser's computer to see if Brooks had any criminal history. Officer Holzapfel also observed Brooks staring straight ahead during the duration of the traffic stop, which he found to be "somewhat unusual."

{¶5} When Officer Holzapfel was about halfway finished filing out the traffic citation, the backup police officer arrived at the scene. With the citation still only halfway completed, Officer Holzapfel returned to Brooks' vehicle and asked Brooks to exit. Brooks complied. Officer Holzapfel then engaged Brooks in conversation, asking whether Brooks had a criminal

history, whether there were any drugs in the vehicle, or whether there was any reason why a K-9 may indicate that drugs are present within the vehicle. Brooks responded in the negative to each question. Brooks then gave consent for Officer Holzapfel to search his person. The body search did not reveal any contraband. Officer Holzapfel then retrieved Diesel from his cruiser and walked the K-9 around Brooks' vehicle. Diesel alerted to the presence of drugs near the rear driver's-side door of the vehicle. Officer Holzapfel placed Diesel back into his cruiser and searched Brooks' vehicle, where he discovered a firearm and two bags of marijuana.

{¶6} The Summit Count Grand Jury subsequently indicted Brooks on the following four counts: (1) carrying concealed weapons in violation of R.C. 2923.12(A)(2), a fourth-degree felony; (2) improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), (I), a fourth-degree felony; (3) receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony; and (4) possession of marijuana in violation of R.C. 2925.11(A)(C)(3), a minor misdemeanor. Brooks pleaded not guilty to the charges and filed a motion to suppress. The trial court held a hearing on Brooks' suppression motion, but ultimately denied the motion.

{¶7} On December 10, 2015, Brooks pleaded no contest to the charges of carrying concealed weapons and receiving stolen property, both fourth-degree felonies. In exchange, the State dismissed the remaining counts contained within the indictment. The trial court then sentenced Brooks to a term of two years of community control.

{¶8} Brooks filed this timely appeal and raises one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred as a matter of law when it denied the Defendant his constitutional rights against illegal search and seizure based upon his motion to suppress the evidence in this case.**

{¶9}   In his sole assignment of error, Brooks argues that the trial court erred by denying his suppression motion because Officer Holzapfel lacked both probable cause and a reasonable suspicion to effectuate the traffic stop and search his vehicle.  We disagree.

### A.  Standard of Review

{¶10}   A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).

### B.  Traffic Stop

{¶11}   The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution protect individuals from unreasonable searches and seizures.  The United States Supreme Court established the basic standard for reviewing the propriety of a traffic stop through its holdings in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Delaware v. Prouse*, 440 U.S. 648 (1979).  Under this standard, "a law enforcement officer may stop a vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity."  *State v. Epling*, 105 Ohio App.3d 663, 664 (9th Dist.1995).  "Reasonable suspicion is something less than probable cause."  *Id.,* citing *State v. VanScoder*, 92 Ohio App.3d

853, 855 (9th Dist.1994). In addition, when "analyzing whether reasonable suspicion existed, this Court looks to the facts available to the officer at the moment of the seizure or the search and considers whether those facts would warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal citations and quotations omitted.) *State v. Blair*, 9th Dist. Summit No. 24208, 2008-Ohio-6257, ¶ 5. Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez,* 449 U.S. 411, 417–418 (1981). Finally, any violation of traffic law provides the reasonable suspicion required to make an investigatory stop. *State v. Johnson,* 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11, citing *Whren v. United States*, 517 U.S. 806 (1996); *State v. Wilhelm*, 81 Ohio St.3d 444 (1998); *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996); *see also State v. Barbee,* 9th Dist. Lorain No. 07CA009183, 2008-Ohio-3587, ¶ 9.

**{¶12}** Here, Brooks contends that the basis of the traffic stop was solely the purported lane violation, not the inoperable headlight. Brooks argues that Officer Holzapfel stopped his vehicle "without specific articulable facts based upon an illegal lane change, which [he] denies." However, Brooks' representation that the traffic stop was premised solely on the alleged lane violation is belied by the record. Officer Holzapfel explicitly testified at the suppression hearing that the traffic stop was based on *both* the vehicle's inoperable headlight and the alleged lane violation. Specifically, Officer Holzapfel testified that after observing both aforementioned traffic violations, he "was going to conduct a traffic stop on the vehicle; however, by the time [he] got out to where the [traffic] light was [at the intersection of Howe Avenue and Main Street], [he] had gotten stuck at the light." Officer Holzapfel explained that he had to wait for cross-traffic to pass before he was able to safely turn onto Howe Avenue, catch up with Brooks' vehicle, and effectuate the traffic stop. Thus, based upon Officer Holzapfel's testimony, we

disagree with Brooks' assertion that the traffic stop in this case was not based, at least in part, on the vehicle's inoperable headlight. As Brooks does not dispute that he was driving a vehicle with an inoperable headlight, we conclude that the initial stop of Brooks' vehicle was lawful. *See State v. Evans*, 67 Ohio St.3d 405, 407 (1993) (stating that the propriety of the initial stop of the defendant's vehicle due to a broken headlight "cannot reasonably be disputed.").

## C. Dog Sniff & Warrantless Search of the Vehicle

{¶13} Brooks raises numerous challenges to the search of his vehicle. First, Brooks contends that the dog sniff utilized by Officer Holzapfel was illegal because "the officer lacked the requisite probable cause to have the dog search the vehicle." Next, Brooks contends that the dog sniff and subsequent search of his vehicle unreasonably prolonged the length of the routine traffic stop. Lastly, Brooks argues that the officer's warrantless search of his vehicle was unconstitutional since it was not supported by probable cause and was carried out without his consent.

{¶14} At the outset, we determine that Brooks' arguments concerning the legality of the dog sniff and the subsequent search of his vehicle are without merit. The use of a drug detection dog does not constitute a "search" within the meaning of the Fourth Amendment and a law enforcement officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Thus, we conclude that the dog sniff in this matter was constitutionally permissible. Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search inside of that vehicle for contraband. *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013–Ohio–4274, ¶ 8, citing *State v. Carlson*, 102 Ohio App.3d 585, 600 (9th Dist.1995). Accordingly, having already determined that the

initial traffic stop in this matter was constitutionally valid, we now conclude that Officer Holzapfel had probable cause to search the interior of Brooks' vehicle following Diesel's indication to the presence of drugs therein. *See Reid* at ¶ 21 (concluding that law enforcement officers had probable cause to search defendant's vehicle where a trained drug dog alerted twice to the driver's side door, indicating the presence of narcotics within the vehicle).

**{¶15}** We turn now to Brooks' argument that the dog sniff prolonged the traffic stop beyond the time reasonably required to complete the mission of the stop. "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." (Internal citations and quotations omitted.) *State v. Ross*, 9th Dist. Lorain No. 12CA010196, 2012–Ohio–6111, ¶ 8, quoting *State v. Davenport*, 9th Dist. Lorain No. 11CA010136, 2012–Ohio–4427, ¶ 6, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, ¶ 12; *see also Rodriguez v. United States*, ––– U.S. –––, 135 S.Ct. 1609, 1612 (2015) ("A seizure justified only by a police-observed traffic violation, * * * become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a [warning] ticket for the violation.") (Internal quotations and citation omitted.) "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Ross* at ¶ 8, quoting *Davenport* at ¶ 6, quoting *Batchili* at ¶ 12. "[I]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may

continue to detain the defendant to investigate those new concerns." *Ross* at ¶ 8, quoting *State v. Shook*, 9th Dist. Lorain No. 93CA005716, 1994 WL 263194, \*3 (June 15, 1994).

{¶16} Officer Holzapfel testified that a routine traffic stop takes approximately 10 to 15 minutes to complete. Here, Officer Holzapfel effectuated the traffic stop at 12:58 a.m. with Diesel already located in the cruiser. Brooks handed over his driver's license shortly thereafter, at which time Officer Holzapfel observed a number of air fresheners located within the cabin of the vehicle, including roughly nine air fresheners hanging from the rearview mirror and at least one air freshener in each vent. Officer Holzapfel testified that this is a tactic commonly "used by people that are using drugs or transporting drugs [who are] trying to hide the odor [of drugs] from police officers and/or police k9s." At this time, Officer Holzapfel was also aware that the Summit County Drug Unit suspected Brooks of trafficking in drugs. Officer Holzapfel also testified that Brooks avoided eye contact by staring straight ahead during the duration of the traffic stop, which he found to be "somewhat unusual." Officer Holzapfel returned to his cruiser at 12:59 a.m., where he searched various court dockets on his computer to see if Brooks had any criminal history while simultaneously filling out a traffic citation. Officer Holzapfel testified that it takes about two or three minutes to search a driver's information on the cruiser's computer, but that he was "continuously working" during this time.

{¶17} The record indicates that backup arrived on the scene while Officer Holzapfel was still in the process of filling out the traffic citation. At 1:04 a.m., while he was still in the process of filling out the traffic citation, Officer Holzapfel reengaged Brooks and asked him to step out of his vehicle. Once Brooks had exited from the vehicle, Officer Holzapfel asked him some questions, inquiring if Brooks had any history with drugs or whether there was anything illegal in his vehicle. Brooks denied ever being involved in drug-related activity or having a criminal

history and stated that there was nothing illegal in his vehicle. Brooks also consented to a body search. At 1:07 a.m., Officer Holzapfel retrieved Diesel from his cruiser and conducted a sniff around the exterior of Brooks' vehicle. Diesel alerted to the odor of narcotics inside of Brooks' vehicle less than one minute later.

{¶18} In our judgment, these facts constitute competent credible evidence to support the trial court's determination that Officer Holzapfel did not impermissibly extend the duration of the stop. Under the totality of the circumstances, we determine that Officer Holzapfel's observation of multiple air fresheners within Brooks' car, coupled with his personal knowledge that the Summit County Drug Unit already suspected Brooks of trafficking in drugs, was sufficient to provide Officer Holzapfel with reasonable suspicion that Brooks was involved in criminal activity beyond that which prompted the initial traffic stop. This information also provided Officer Holzapfel with reasonable suspicion that Brooks' vehicle likely contained drugs. *See State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 25-26 (concluding that the officers' observation of an air freshener on the front vent of the defendant's vehicle, along with the officers' knowledge that the defendant had recently been questioned by the DEA, among other facts, was sufficient to give officers reasonable suspicion of criminal activity such that the officers were justified in briefly extending the duration of the traffic stop to conduct a canine sniff of the defendant's vehicle). As such, we conclude that Officer Holzapfel was justified in detaining Brooks for a short period of time after the initial traffic stop to conduct a dog sniff of the vehicle.

{¶19} At the time of the dog sniff, no traffic citation had yet been issued. Additionally, there is no evidence indicating that Officer Holzapfel was not diligent and timely in the exercise of his duties, especially considering that the dog sniff occurred less than ten minutes after Brooks

was initially stopped. As a result, we cannot reverse the trial court's denial of the motion to suppress on the basis that the duration of the traffic stop was unconstitutionally extended. *See Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, at ¶ 14 (concluding that there "simply [was] no evidence to suggest that [the defendant]'s detention for the traffic violation was of sufficient length to make it constitutionally dubious" where the drug dog alerted approximately nine minutes into stop and the traffic citation had not yet been completed); *State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015–Ohio–2473, ¶ 29-30 (determining that traffic stop of eight minutes was not impermissibly extended for dog sniff that occurred after the defendant was removed from the vehicle, searched for weapons, and placed in the back of the police cruiser).

{¶20} Brooks' assignment of error is overruled.

III.

{¶21} Brooks' sole assignment of error is overruled and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.