[Cite as *State v. Taylor-Billings*, 2023-Ohio-3104.]

STATE OF OHIO        )              IN THE COURT OF APPEALS
                      )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                    C.A. No.     22CA011914

     Appellant

     v.                        APPEAL FROM JUDGMENT
                                   ENTERED IN THE
ANTWAN TAYLOR-BILLINGS      COURT OF COMMON PLEAS
                                   COUNTY OF LORAIN, OHIO
     Appellee               CASE No.    21CR105095

DECISION AND JOURNAL ENTRY

Dated: September 5, 2023

STEVENSON, Judge.

**{¶1}**    Appellant, the State of Ohio, appeals the judgment of the Lorain County Court of Common pleas granting a motion to suppress filed by Appellee, Antwan Taylor-Billings. This Court reverses.

I.

**{¶2}**    On August 30, 2021, an Ohio state trooper initiated a traffic stop of Taylor-Billings' vehicle. After initiating the traffic stop, the trooper discovered a firearm, marijuana, and a variety of pills, which contained methamphetamine, inside the vehicle. The trooper had Taylor-Billings exit the vehicle and field sobriety tests and a breathalyzer test were administered. Taylor-Billings failed the field sobriety tests and the breathalyzer test.

**{¶3}**    Several months after the stop, Taylor-Billings was indicted on one count of carrying a concealed weapon with an attendant forfeiture specification, one count of improperly handling a firearm in a motor vehicle with an attendant forfeiture specification, one count of operating a

vehicle under the influence of alcohol, and one count of operating a motor vehicle with a prohibited blood-alcohol concentration. Taylor-Billings pleaded not guilty to the charges at arraignment.

**{¶4}** Taylor-Billings filed a motion to suppress, arguing that there was no probable cause to conduct a traffic stop of his vehicle and the trooper did not have sufficient reasonable suspicion to conduct field sobriety tests. The State filed a brief in opposition to the motion to suppress. After Taylor-Billings filed his motion, the grand jury returned a supplemental indictment that included one count of trafficking in drugs with an attendant firearm specification as well as one count of possession of drugs. Taylor-Billings pleaded not guilty to the supplemental charges.

**{¶5}** The matter proceeded to a hearing on the motion to suppress. The trial court subsequently issued a written decision granting Taylor-Billings' motion on the basis that the State failed to demonstrate that the trooper had an objectively reasonable belief that a traffic violation had occurred to justify the stop. The State appealed, raising one assignment of error for review.

II.

**THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE.**

**{¶6}** The State argues in its sole assignment of error that the trooper had reasonable suspicion to stop Taylor-Billings' vehicle and that the trial court's reasoning to suppress evidence was flawed. We agree.

**{¶7}** The Ohio Supreme Court has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Pursuant to *Burnside*, "[o]nce this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo." *State v. Iloba*, 9th Dist. Wayne No. 20AP0030, 2021-Ohio-3700, ¶ 7, citing *Burnside* at ¶ 8.

{¶8} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." Article I, Section 14, of the Ohio Constitution contains nearly identical language. The traffic stop of a vehicle constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-810 (1996).

{¶9} "[A] law enforcement officer may stop a vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity." *State v. Epling*, 105 Ohio App.3d 663, 664 (9th Dist.1995). *See also Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996) ("where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *.") A stop is constitutionally valid provided the law enforcement officer has "a reasonable, articulable suspicion that criminal activity *may* be afoot." (Emphasis added.) *State v. Roberts*, 2d Dist. Montgomery No. 21221, 2006-Ohio-3042, ¶ 7; *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

{¶10} "Reasonable suspicion is something less than probable cause." *Epling* at 664, citing *State v. VanScoder*, 92 Ohio App.3d 853, 855 (9th Dist.1994). Reasonable suspicion "is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause." *Roberts* at ¶7, citing *Terry* at 1. "Thus, 'the likelihood of criminal activity

need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *State v. Cunningham*, 9th Dist. Medina No. 14CA0032-M, 2015-Ohio-4306, ¶ 17, quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002). To satisfy that standard, the law enforcement officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 21.

{¶11} The propriety of a traffic stop must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. "These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Roberts* at ¶ 8, citing *State v. Andrews,* 57 Ohio St.3d 86 (1991). When "analyzing whether reasonable suspicion existed, this Court looks to the facts available to the officer at the moment of the seizure or the search and considers whether those facts would warrant a man of reasonable caution in the belief that the action taken was appropriate." (Internal citations and quotations omitted.) *State v. Blair*, 9th Dist. Summit No. 24208, 2008-Ohio-6257, ¶ 5. "Reasonable suspicion is based on the totality of the circumstances." *State v. Bralek*, 9th Dist. Summit No. 28727, 2018-Ohio-2496, ¶ 11, citing *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). The Court must consider "the totality of the circumstances as they were known to [the trooper] prior to the time [the trooper] stopped [the defendant], together with reasonable inferences that could be drawn from the circumstances ***." *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, ¶ 40.

{¶12} The trooper was the sole witness to testify at the suppression hearing. When asked "what did you observe that led you to stop [Taylor-Billings][,]" the trooper testified that he saw the lights on Taylor-Billings' vehicle "toggle on and off. Or off and back on." The lights on

Taylor-Billings' vehicle are seen in the dash cam video, which was shown at the suppression hearing and admitted into evidence, turning off and then quickly turning on. After seeing the lights toggle off and on and deciding to initiate a traffic stop of Taylor-Billings' vehicle, the trooper observed Taylor-Billings' vehicle "[d]riving over the line, the dash line to the left there, making a marked lanes violation over it."

{¶13} The trial court issued a written decision granting Taylor-Billings' motion to suppress. The trial court stated in its written decision:

> The court finds that on the night of August 30, 2021, [the trooper] and his dashcam, showed that the operator of a car turned off his lights for about a second * * *. From this observation, the trooper thought that this could be a violation of the duty to drive with your lights on at night. [The trooper], however, could not recall ever being instructed that this was a violation of traffic laws and was able to come up with a number of valid reasons why a person might momentarily turn off or flash his headlights. After [the trooper] turned on his flashing lights and accelerated to pull the defendant over, the defendant reacted by momentarily leaving his marked lane just as he pulled over in compliance with the trooper's signal. The court cannot use that natural reaction to seeing a law enforcement vehicle's flashing lights to bootstrap a claim that the trooper had reasonable suspicion of a traffic violation.
>
> This investigative stop, while viewed in light of the totality of the surrounding circumstances, did not provide the basis for an objectively reasonable belief that a traffic violation had occurred.

This appeal followed.

{¶14} The State argues that the trooper was justified in initiating a stop after he observed Taylor-Billings operating a vehicle without headlights at night in violation of R.C. 4513.03(A)(1) and R.C. 4513.14(A). As set forth in R.C. 4513.03(A), "[e]very vehicle * * * *shall* display lighted lights * * * during *all* of the following times: (1) The time from sunset to sunrise." (Emphasis added.) R.C. 4513.14(A) requires that,"[a]t all times mentioned in section 4513.03 of the Revised Code at least two lighted lights *shall* be displayed, one on each side of the front of every motor vehicle * * * ." (Emphasis added.) "It is axiomatic that when used in a statute, the word 'shall'

denotes that compliance with the commands of that statute is mandatory * * * ." *State ex rel. Botkins v. Laws*, 69 Ohio St.3d 383, 385 (1994); *In re Collins*, 9th Dist. Summit No. 20864, 2002-Ohio-2436, ¶ 14.

{¶15} The August 30, 2019 traffic stop occurred after sunset. Pursuant to R.C. 4513.03(A), Taylor-Billings was required to "display lighted lights" on his vehicle at "all * * * times * * * from sunset to sunrise." Pursuant to R.C. 4513.14(A), Taylor-Billings was specifically required to display "at least two lighted lights[.]" Whoever violates R.C. 4513.03 and R.C. 4513.14 "is guilty of a minor misdemeanor." R.C. 4513.03(C); R.C. 4513.14(B).

{¶16} R.C. 4513.03(A)(3) requires that lighted lights be displayed "[a]t any time when the windshield wipers of the vehicle are in use because of precipitation on the windshield." R.C. 4513.03(B) does not prohibit the initiation of a traffic stop for an R.C. 4513.03(A)(1) violation. By expressly prohibiting only traffic stops while failing to display lights while driving in the rain, it is clear the Legislature intended that violations of displaying lights at night may be the basis for a stop.

{¶17} The trooper testified that he observed the lights on Taylor-Billings' vehicle "toggle on and off. Or off and back on." The trooper observed that the vehicle's lighted lights were not "displayed during *all* of the following times: (1) The time from sunset to sunrise." R.C. 4513.03(A)(1). *Accord* R.C. 4513.14(A). The trooper was aware of the statute that "says at night the lights have to be on[.]" Even if only a minor traffic violation, based on the trooper's observations, the traffic stop was constitutionally valid. *Erickson*, 76 Ohio St.3d at 11-12.

{¶18} Further, the question of an R.C. 4513.03 violation involves simply whether a defendant violated the statute, not whether the violation continued for an appropriate duration. The statute, as written, includes a blanket prohibition for driving without headlights at night. It would

be exceedingly difficult for law enforcement officers to follow, and courts to apply, a durational requirement. If toggling the lights for one second is not sufficient, officers are left to determine what duration is sufficient. Courts would then have to decide if the duration threshold is breached without any statutory guidance on the required duration of the violation. Courts should enforce this clear expression of statutory intent, rather than craft a durational requirement that does not exist.

{¶19} The trial court found in its written decision that the trooper did not have "an objectively reasonable belief that a traffic violation had occurred." The trooper testified that he saw Taylor-Billings' lights toggle off and on, it was dark outside, and the trooper was aware that lights were statutorily required to be on at night. Based on a totality of the circumstances, and when viewed through the eyes of a reasonable and prudent law enforcement officer, the trooper had a reasonable suspicion that criminal activity, even if only a minor traffic violation, may be afoot. Whether Taylor-Billings could be convicted of a R.C. 4513.03(A) or R.C. 4513.14(A) offense "is a different question than whether [the trooper] acted reasonably in light of the facts and circumstances known at the time of the stop." *State v. Rubsam*, 9th Dist. Medina No. 18CA0089-M, 2019-Ohio-2153, ¶ 8, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 14-15.

{¶20} Additionally, once the trooper decided to initiate a traffic stop, and before Taylor-Billings pulled his vehicle over to the side of the road and stopped, the trooper observed the vehicle commit another traffic violation. The trooper witnessed Taylor-Billings' vehicle "driv[e] over the line, the dash line to the left there, making a marked lanes violation over it." R.C. 4511.33(A)(1) provides that "[a] vehicle * * * *shall* be driven, as nearly as is practicable, entirely within a single lane or line of traffic * * * ." (Emphasis added.) Unless the offender has prior convictions which

elevate the level of the offense, a R.C. 4511.33 violation is a minor misdemeanor. R.C. 4511.33(B). The trooper's observance of the marked lanes violation further supports the traffic stop of Taylor-Billings' vehicle. *See State v. Kuhn*, 9th Dist. Medina No. 20CA0070-M, 2021-Ohio-2165 (trial court's denial of the defendant's motion to suppress was affirmed on appeal; officer had reasonable suspicion to effectuate a traffic stop after observing two separate traffic violations, the second violation being a marked lanes R.C. 4511.33(A)(1) violation.)

{¶21} As is evident from the dash cam video, it was very dark at the time of the traffic stop. The dash cam video and the trooper's testimony establish that, contrary to R.C. 4513.03(A)(1) and R.C. 4513.14(A), at least two lights on Taylor-Billings' vehicle were not lighted at "all" times from "sunset to sunrise." This observed violation, standing alone, was sufficient to initiate a traffic stop of Taylor-Billings' vehicle. The trooper then observed another traffic violation, a marked lanes R.C. 4511.33(A)(1) violation. Based on the totality of the circumstances, the trooper had an articulable reasonable suspicion of criminal activity or probable cause to stop Taylor-Billings for a traffic violation. The traffic stop of Taylor-Billings' vehicle on the night in question was legally justified. Accordingly, the trial court erred when it granted Taylor-Billings' motion to suppress.

{¶22} The State's assignment of error is sustained.

III.

{¶23} This Court sustains the State's sole assignment of error. The judgment of the Lorain County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

---

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶24} I respectfully dissent as I would hold that the trial court's suppression order should be affirmed.

{¶25} This case does not involve a scenario where the trial court failed to recognize that Taylor-Billings toggled his headlights. Instead, the trial court determined that the manner in which

Taylor-Billings toggled his headlights did not amount to a traffic violation. Specifically, the trial court observed that "the trooper thought that this could be a violation of the duty to drive with your lights on at night. [The trooper], however, could not recall ever being instructed that this was a violation of traffic laws and was able to come up with a number of valid reasons why a person might momentarily turn off or flash his headlights."

{¶26} During his testimony, the trooper did not connect the basis for the stop to a violation of a specific statute or ordinance. The trooper acknowledged that there are multiple reasons why a motorist might lawfully toggle their headlights. At one point, the trooper seemed to suggest that an intentional toggle would not be illegal but he was unsure as to why Taylor-Billings toggled his lights. The trooper testified that he decided to initiate the stop to determine whether the toggle was deliberate or if it stemmed from a mechanical issue with the vehicle. The trooper continued that the toggling of the lights was the sole basis for initiating the stop and that there was no other reason to pull over Taylor-Billings' vehicle. The State holds the burden at a suppression hearing. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999). Under these circumstances, I do not think that the trial court committed reversible error in concluding that the State failed to demonstrate that there was a lawful basis for the stop.

{¶27} The trial court further explained that the marked lanes violation was merely an extension of the invalid stop that was already in progress. The trial court stated that "[a]fter [the trooper] turned on his flashing lights and accelerated to pull the defendant over, the defendant reacted by momentarily leaving his marked lane just as he pulled over in compliance with the trooper's signal. The court cannot use that natural reaction to seeing a law enforcement vehicle's flashing lights to bootstrap a claim that the trooper had reasonable suspicion of a traffic violation." I agree with the trial court's reasoning.

{¶28} Finally, to the extent that the State contends that the trial court's factual findings were not supported by competent, credible evidence, I would hold that the trial court's interpretation of the dashboard camera video actually inured to the benefit of the State. Candidly, I would submit that the toggling of the lights on Taylor-Billings' vehicle is not readily apparent upon an initial viewing of the video. Only upon multiple viewings does it become evident that Taylor-Billings toggled his lights for a brief moment. Furthermore, the video further confirms that the marked lanes violation occurred while Taylor-Billings was in the process of complying with the trooper's signal. Given the totality of the circumstances, the evidence supports the trial court's conclusion that the marked lanes violation was not a separate and distinct event.

APPEARANCES:

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellant.

DOUGLAS W. MERRILL, Attorney at Law, for Appellee.