[Cite as *State v. Wright*, 2024-Ohio-3142.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     23AP0030 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRELL QUINTAZ WRIGHT | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.     2020 CRC-I 000251 |

DECISION AND JOURNAL ENTRY

Dated: August 19, 2024

FLAGG LANZINGER, Judge.

{¶1}     Defendant-Appellant Terrell Quintaz Wright appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms but remands this matter to the trial court to issue a corrected sentencing entry that incorporates the R.C. 2929.14(C)(4) findings that were made at the sentencing hearing.

I.

{¶2}     A grand jury indicted Wright with one count of trafficking in cocaine, a felony of the third degree, in violation of R.C. 2925.03(A)(2); one count of possession of cocaine, a felony of the third degree, in violation of R.C. 2925.11(A); and, one count of illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(l). Wright pleaded not guilty.

{¶3}     Wright's charges stemmed from a traffic stop of a rental vehicle Wright was driving. During the traffic stop, Officers detained Wright and his passenger. After a search, the

officers found marijuana and cocaine inside the vehicle. Wright filed a motion to suppress evidence challenging the constitutionality of the stop and the length of detainment. The trial court held a suppression hearing and denied Wright's motion.

**{¶4}** Wright entered a plea of no contest to one count of trafficking in cocaine. Upon motion of the State, the trial court dismissed the remaining counts. The trial court accepted Wright's plea and found him guilty of trafficking in cocaine. The trial court sentenced Wright to 18 months in prison and ordered that the prison sentence be served consecutively with the sentence Wright was already serving. Wright now appeals raising four assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT'S FINDING OF FACTS WAS IMPROPER IN THAT IN THIS CASE THE SOLE RELIANCE ON OFFICER'S TESTIMONY WRIGHT FAILED TO EMPLOY TURN SIGNAL WAS IMPROPER AND ERRED WHEN IT CONCLUDED THAT THE TROOPER HAD A REASONABLE, ARTICULABLE SUSPICION TO INITIATE THE TRAFFIC STOP.**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT'S FINDING OF FACTS WAS IMPROPER THAT OFFICER WAS JUSTIFIED IN REMOVING WRIGHT FROM THE VEHICLE, AND ERRED WHEN IT CONCLUDED THAT THE OFFICER WAS JUSTIFIED IN REMOVING WRIGHT FROM VEHICLE..(Sic.)**

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT'S FINDING OF FACTS WAS IMPROPER THAT BY TESTIMONY OFFICER FESTA'S INVESTIGATORY TACTICS-CALLING IN BACKUP TO ASSIST WITH THE WRITING OF THE TRAFFIC CITATION AND REMOVING THE OCCUPANTS FROM THE VEHICLE TO PREPARE FOR AN INVESTIGATORY SWEEP BY THE CANINE DID NOT UNCONSTITUTIONALLY PROLONG THE TRAFFIC STOP, AND ERRED WHEN IT CONCLUDED THAT THE TRAFFIC STOP WAS NOT UNCONSTITUTIONALLY PROLONGED.**

{¶5} In his first, second, and third assignments or error, Wright argues that the trial court erred when it denied his motion to suppress evidence. We disagree.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶7} In his first assignment of error, Wright argues the trial court's conclusion, finding Wright committed traffic violations, was not supported by competent, credible evidence. To justify the traffic stop, Officer Festa testified he observed Wright commit a traffic violation but was unable to capture the violations on his body camera or dashboard camera. Wright argues the alleged traffic violation was not "established" because Officer Festa failed to capture the alleged turn signal violation on a video camera.

{¶8} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated . . . ." Article I, Section 14, of the Ohio Constitution contains nearly identical language. The traffic stop of a vehicle constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-810 (1996).

{¶9} "[A] law enforcement officer may stop a vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that an occupant is or has been engaged in criminal activity." *State v. Epling*, 105 Ohio App.3d 663, 664 (9th Dist. 1995). A stop is constitutionally valid provided the law enforcement officer has "a reasonable, articulable suspicion that criminal activity may be afoot." *State v. Taylor-Billings,* 2023-Ohio-3104, ¶ 9 (9th Dist.).

{¶10} This court has previously held that a police officer's testimony that he observed a defendant commit a traffic violation is sufficient to show that the officer had reasonable suspicion to support a traffic stop, even though the video camera on the officer's car did not record the violations. *See State v. Simin*, 2012-Ohio 4389, ¶ 11 (9th Dist.). Officer Festa testified that he observed: (1) Wright operating the silver truck, (2) that Wright obstructed the roadway, causing Officer Festa to need to abruptly stop, and (3) that Wright turned right without using a turn signal. Officer Festa's testimony established that he observed Wright obstruct the right-of-way and fail to use his turn signal. Although Wright attempted to demonstrate on cross-examination that Officer Festa's testimony regarding the alleged traffic violations was not credible, we must defer to the trial court's credibility determination and consideration of the evidence. *See State v. Hahn*, 2016-Ohio-7585, ¶ 10 (9th Dist.), citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992) ("At a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact.").

**{¶11}** Accordingly, Wright has not demonstrated that the trial court erred in finding that the officers had reasonable suspicion to initiate the traffic stop. Wright's first assignment of error is overruled.

**{¶12}** In his second assignment of error, Wright asserts that the trial court erred when it concluded that Officer Festa lawfully removed Wright from his vehicle. It is well established that an officer may remove a driver from a vehicle during a traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, fn. 6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *see also Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (recognizing that officers routinely order occupants to exit the vehicle during traffic stops for officer safety); *State v. Thomas*, 2020-Ohio-3539, ¶ 12 (9th Dist.). Wright's argument to the contrary lacks merit.

**{¶13}** In his third assignment of error, Wright argues the trial court erred in finding that the traffic stop was not unconstitutionally prolonged by Officer Festa. During the traffic stop, Officer Festa ordered Wright from the truck. Officer Festa called other officers to assist him in completing a traffic citation. Wright claims the trial court improperly found Officer Festa's "investigative tactics" of calling other officers to assist, initiating a drug dog sniff, and removing him from the vehicle did unconstitutionally prolong the traffic stop.

**{¶14}** "A traffic stop of a vehicle is an investigatory stop, which is a seizure for purposes of the Fourth Amendment, and such a stop may be lawfully based on an officer's reasonable suspicion 'that a motorist has committed, is committing, or is about to commit a crime.'" *Thomas* at ¶ 12 (9th Dist.), quoting *State v. Phillips*, 2017-Ohio-1312, ¶ 6 (9th Dist.). "If a traffic stop is justified, and does not last any longer than necessary to effectuate the original purpose of the stop,

a law enforcement official may simultaneously conduct a K-9 sniff of the exterior of the vehicle without any additional reasonable, articulable suspicion of criminal activity." *Thomas* at ¶ 14, quoting *State v. Reid*, 2013-Ohio-4274, ¶ 8 (9th Dist.). When the initial basis of a stop is a traffic violation, the authority for that stop "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "[I]f during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns." *State v. Brooks*, 2016-Ohio-7025, ¶ 15 (9th Dist.), quoting *State v. Ross*, 2012-Ohio-6111, ¶ 8 (9th Dist.).

{¶15} Here, competent, credible evidence supported the trial court's factual finding that "Officer Festa's investigative tactics—removing the occupants from the vehicle and preparing for his canine to conduct a drug sniff of the vehicle—did not prolong the search beyond the time reasonably required to issue the traffic citation." During the suppression hearing, Officer Festa testified he initiated the traffic stop with the drug dog in his police vehicle. Officer Festa testified he called for backup, and Officers Whitmore and Berry arrived within minutes. Both Officers Festa and Whitmore testified that while Officer Berry was drafting the citation, Officer Whitmore informed Officer Festa that he had smelled the odor of marijuana coming from the vehicle. Officer Festa testified that less than ten minutes had passed from the initiation of the stop until Officer Whitmore informed Officer Festa regarding the odor of marijuana.[1] Officer Festa and Officer Whitmore testified that they initiated a search of the truck based on the odor of marijuana.[2] All

---

[1] At the time of this incident, recreational use of marijuana remained illegal in Ohio.

[2] Wright did not challenge whether the officers had probable cause to search the truck.

three officers testified that the average time to complete a stop and to write a traffic citation was ten to fifteen minutes. The trial court did not err in concluding the officers did not prolong the traffic stop. *See State v. Norvet*, 2016-Ohio-3494, ¶ 6 (9th Dist.); *Rodriguez* at 351.

{¶16} Moreover, it is not uncommon for Officers to request backup or draft citations based on the observations of other officers during a traffic stop. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999). Officers may seek assistance from other officers during a traffic stop so long as the assistance does not delay the traffic stop beyond the time necessary to address the infraction that is the purpose of the stop. *Rodriguez*, 575 U.S. at 354; *see also State v. Gasser*, 2016-Ohio-7538, ¶ 11 (9th Dist.); *State v. Jackson*, 2015-Ohio-2473, ¶ 30 (9th Dist.).

{¶17} The trial court did not err in denying Wright's motion to suppress. Wright's first, second, and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED WHEN IT SENTENCED WRIGHT TO CONSECUTIVE PRISON TERMS WHEN CLEARLY AND CONVINCINGLY THE RECORD FAILED TO SUPPORT ITS FINDING.**

{¶18} In his fourth assignment of error, Wright argues that the trial court's decision to impose consecutive sentences was contrary to law and not supported by the record.

{¶19} "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶20} To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry . . . ." *State v. Bonnell*, 2014-Ohio-3177, syllabus. The trial court "has no obligation to state reasons to support its findings." *Id.* R.C. 2929.14(C) does not differentiate between imposing consecutive sentences on multiple counts in a single case and imposing consecutive sentences on multiple counts in separate cases. *State v. Fazenbaker*, 2021-Ohio-3447, ¶ 28 (9th Dist.), citing *State v. Gossett*, 2019-Ohio-3284, ¶ 8 (8th Dist.).

{¶21} R.C. 2929.14(C)(4) provides that, "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses," a trial court may require the offender to serve the terms consecutively "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public . . . ." The court must also find "any" of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a-c).

{¶22} "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing[; h]owever, a word-for-word recitation of the language

of the statute is not required[.]" (Alterations in original.) *State v. Blackert*, 2015-Ohio-2248, ¶ 10 (9th Dist.), quoting *State v. Kilmire*, 2015-Ohio-665, ¶ 16 (9th Dist.). "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Blackert* at ¶ 10, quoting *Kilmire* at ¶ 16.

{¶23} Here, the trial court imposed an 18-month prison sentence on the sole count of trafficking in cocaine. During the sentencing hearing, the trial court stated consecutive sentences were "necessary to punish [Wright] and to protect the public from future crime" and that consecutive sentences were "not disproportionate to the seriousness of the conduct and danger imposed by [Wright.]" *See* R. C. 2929.14(C). Additionally, at the sentencing hearing, the trial court made findings pursuant to R.C. 2929.14(C)(4)(a) stating that consecutive sentences were necessary because Wright was "on post-release control at the time [he] committed the offense." *See* R.C. 2929.14(C)(4)(a).

{¶24} We find that these statements were sufficient to show that the trial court engaged in the proper analysis and made the necessary statutory findings before imposing consecutive sentences. These trial court's statements satisfy the first two required prongs for the imposition of consecutive sentences because they reflect that the consecutive sentences are needed to punish the offender and protect the public and they are not disproportionate to the seriousness of the crimes committed. Moreover, by stating the crime was committed while Wright was on post-release control, the trial court sufficiently stated its finding under R.C. 2929.14(C)(4)(a). We find no error in the imposition of consecutive sentences.

{¶25} Additionally, Wright argues that the record does not support the trial court's decision to impose consecutive prison sentences. The record reveals, at the time of his arrest,

Wright was on post release control for possession of cocaine, a third-degree felony, and possession of heroin, a fifth-degree felony, ordered by the Wayne County Court of Common Pleas. Wright was also serving three years of community control for possession of cocaine, a fourth-degree felony, ordered by the Stark County Court of Common Pleas. Additionally, Wright was serving two years of community control for trafficking in cocaine and trafficking in heroin, both fifth degree felonies, ordered by the Medina County Court of Common Pleas. Wright has not pointed this Court to any authority indicating a trial court errs when it imposes consecutive sentences after a defendant commits a crime while on post-release control. This Court's research reveals otherwise. *See, e.g.*, *State v. Mack*, 2005-Ohio-6325, ¶ 24 (9th Dist.); *State v. Bridges*, 2017-Ohio-8579, ¶ 16 (8th Dist.); *State v. Lunsford*, 2003-Ohio-1442, ¶ 10 (12th Dist.).

{¶26} "[T]he court should . . . incorporate its statutory findings into the sentencing entry." *Kilmire*, 2015-Ohio-665, at ¶ 16 (9th Dist.), quoting *Bonnell*, 2014-Ohio-3177, at ¶ 29. "However, when a court does engage in the proper analysis and adequately states the statutory findings, the sentence is proper even if the sentencing entry does not journalize the findings." *State v. Giles*, 2015-Ohio-2132, ¶ 18 (9th Dist.), citing *Bonnell* at ¶ 29 ("A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law[.]"). "Rather, the proper disposition of such a factual scenario is to affirm the imposition of consecutive sentences and remand the matter for the trial court 'to issue a new sentencing entry, nunc pro tunc, to incorporate its consecutive sentence findings.'" *Giles* at ¶ 18, quoting *State v. Sandridge*, 2015-Ohio-1541, ¶ 45 (8th Dist.).

**{¶27}** Here, the sentencing entry fails to incorporate the trial court's findings into its sentencing entry. Accordingly, this matter is remanded to the trial court to issue a corrected sentencing entry that incorporates this necessary finding.

**{¶28}** Wright's fourth assignment of error is overruled. We remand this matter to issue a corrected sentencing entry that incorporates the R.C. 2929.14(C)(4) findings that were made at the sentencing hearing.

### III.

**{¶29}** Wright's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed. However, we remand this matter to the trial court so that it can issue a nunc pro tunc entry containing the R.C. 2929.14(C)(4) findings that were made at the sentencing hearing.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and BRIANNA DIETRY, Assistant Prosecuting Attorney, for Appellee.