[Cite as *State v. Karpovitch*, 2025-Ohio-4323.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2024-L-064** |
| | **2024-L-065** |
| Plaintiff-Appellee, | |
| | Criminal Appeals from the |
| - vs - | Court of Common Pleas |
| | |
| JERRY J. KARPOVITCH, | |
| | Trial Court Nos. 2023 CR 000794 |
| Defendant-Appellant. | 2023 CR 001133 |

---

## OPINION AND JUDGMENT ENTRY

Decided: September 15, 2025
Judgment: Affirmed in part, reversed in part, and remanded

---

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Jerry J. Karpovitch, appeals his sentences for Aggravated Possession of Drugs and Possession of Cocaine in this consolidated appeal. For the following reasons, we affirm in part and reverse in part Karpovitch's sentences. This matter is remanded for the purposes of a limited resentencing hearing to provide the indefinite sentencing notifications in accordance with R.C. 2929.144(C) and R.C. 2929.19(B)(2)(c) and to reconsider the imposition of a mandatory fine in connection with Possession of Cocaine (Appeal No. 2024-L-065).

### Factual and Procedural History

{¶2}  In Lake County Court of Common Pleas Case No. 23-CR-000794 (Appeal No. 2024-L-064), Karpovitch pled guilty to one count of Aggravated Possession of Drugs, a felony of the third degree in violation of R.C. 2925.11.  In Lake County Court of Common Pleas Case No. 23-CR-001133 (Appeal No. 2024-L-065), Karpovitch pled guilty to one count of Possession of Cocaine, a felony of the first degree in violation of R.C. 2925.11.

{¶3}  On February 1, 2024, a joint sentencing hearing was held on Case Nos. 23-CR-000794 and 23-CR-001133 as well as four other then-pending cases against Karpovitch (none of which have been appealed).  The sentencing court reviewed the circumstances of the six cases with Karpovitch.  In accord with the plea agreements, defense counsel and the prosecutor jointly recommended an aggregate sentence of three to four and a half years in prison.  Additionally, defense counsel requested a period of "leniency" of about sixty days so that Karpovitch could receive medical treatment for an arm injury: "He's got a very serious injury to his right arm.  I saw it.  He's going to need surgery within the next two or three weeks to that arm. … I'm going to ask the Court that when you sentence him that you give him time to report so he can take care of that issue because I don't think they are going to be able to take care of that in the institution."  Observing that "the only thing that the prison system in the state of Ohio does worse [than] control the drugs which they are perfectly happy to allow … to be used in prison is medical care," the court agreed to continue sentencing until after Karpovitch received medical treatment.  The court advised Karpovitch: "If you want any hope that I'm going to go along with this joint recommendation then you're going to get over your attitude that [your drug addiction is] nobody's business and you're going to stay off the drugs because I can

assure you whatever chance there is I'm going to go with the joint recommendation will be out the window if you're screwing around; do you understand that?" Karpovitch responded the matter was "crystal clear."

{¶4} Subsequent to the February 1 hearing and prior to receiving medical treatment, Karpovitch was arrested on new drug charges.

{¶5} On March 1, 2024, the sentencing hearing was concluded. The court again reviewed the charges to which Karpovitch had pled:

> THE COURT: On the 22-1158 you were caught with crack, meth, pills and a scale; 23-550 meth; 23-1022 heroin and meth; 23-794 meth, crack and powder cocaine [Aggravated Possession of Drugs]; 23-1009 heroin, crack, scale with residue, 400 in cash, $263.00, $25.00 in cash; 23-1133 8.9 grams of crack, 22.2 grams of baking soda, I can't imagine what that's for, 23.8 grams of cocaine, 2.4 grams of meth, a digital scale and a glass measuring cup [Possession of Cocaine]. I can't imagine what the baking soda, the scale and the measuring cup was for?
>
> THE DEFENDANT: Turning cocaine into smokable crack.
>
> THE COURT: What was the scale for?
>
> THE DEFENDANT: For making sure I purchased, I got what I purchased and for if I attempted to sell something that I gave them what they paid for.
>
> THE COURT: And what was the glass measuring cup for?
>
> THE DEFENDANT: For turning powder cocaine into crack.
>
> THE COURT: So I think we had a discussion on February 1st about the scale and this is the first time you told me to make sure what the amount you were selling was correct.
>
> THE DEFENDANT: Sure.
>
> THE COURT: You didn't tell me that last time.
>
> THE DEFENDANT: Cause I'm a fricking liar.

{¶6} On March 5, the Judgment Entries of Sentence were issued. For Aggravated Possession of Drugs, Karpovitch was sentenced in relevant part to twenty-four months in prison. The sentencing court noted that, pursuant to R.C. 2929.18(B)(1), a mandatory fine of $5,000.00 was to be imposed. However, the court did not impose the mandatory fine: "the Court further finds, in considering the Affidavit of Indigency filed by the Defendant, that Defendant is an indigent person and unable to pay the mandatory fine." For Possession of Cocaine, the court imposed an indefinite prison term of a minimum of six years to a maximum of nine years in prison. The court also imposed a mandatory fine of $7,500.00 pursuant to R.C. 2929.18(B)(1). The court ordered the sentences for Aggravated Possession of Drugs and Possession of Cocaine to be served consecutively.

{¶7} On September 12, 2024, Karpovitch filed Motions for Leave to File a Delayed Appeal which were granted. On appeal, he raises the following assignments of error:

> [1.] The Trial Court Erred in Imposing Consecutive Sentences.
>
> [2.] Appellant's sentences are contrary to law because they were based on impermissible sentencing considerations and because he was denied his constitutional right to be sentenced by a neutral decision maker.
>
> [3.] The trial court erred in failing to notify appellant of the total aggregate sentence imposed and in failing to provide him with all of the Reagan Tokes notifications required by R.C. 2929.19(B)(2).
>
> [4.] The trial court erred in imposing a fine in Case No. 23 CR 1133 pursuant to R.C. 2929.18(B), or in the alternative, appellant was denied his constitutional right to the effective assistance of counsel by failing to properly file an affidavit of indigency in that case.

***First Assignment of Error: Standards for Imposing Consecutive Sentences***

{¶8}    Under the first assignment of error, Karpovitch argues that the record does not support the findings necessary to impose consecutive sentences.

{¶9}    "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court."  R.C. 2953.08(G)(2).  "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing … if it clearly and convincingly finds either … [t]hat the record does not support the sentencing court's findings under division … (C)(4) of section 2929.14 [to impose consecutive sentences]" or "[t]hat the sentence is … contrary to law."  R.C. 2953.08(G)(2)(a) and (b); *State v. Marcum*, 2016-Ohio-1002, ¶ 1.  "[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12."  (Citations omitted.)  *State v. Boone*, 2024-Ohio-6116, ¶ 33 (11th Dist.).

{¶10}   The default rule in Ohio is that "a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States."  R.C. 2929.41(A).  Nevertheless, the following provision is made for the imposition of consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to

the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶11} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. "Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

### First Assignment of Error: the Lower Court Made the Necessary Findings to Impose Consecutive Sentences

{¶12} Karpovitch does not claim that the sentencing court failed to make any of the necessary findings to impose consecutive sentences, rather, his argument is that the record does not support the court's findings. Karpovitch asserts that the "findings of necessity and proportionality" are unsupported in light of the following: he has never been

convicted of violent crime, only drug offenses; he was clean for a period of six years after receiving treatment for drug addiction in 2010; and the originally recommended sentence of three years would still institutionalize him for a substantial number of years and allow him to receive treatment.[1]

{¶13} Karpovitch's arguments do not undermine the sentencing court's findings with respect to necessity and proportionality. Nothing in the statute suggests that the necessity and proportionality analysis is different for drug abuse charges as opposed to violent crimes. Karpovitch's criminal record as an adult goes back to 1997 (he was forty-five at the time of sentencing). His claim to have been clean for six of these twenty-five years is not particularly significant (and may only reflect a period of time when he avoided new charges). The number of pending charges, the amount and nature of the drugs involved, and the facts that Karpovitch manufactured and sold drugs do not support his representation of himself as a "standard issue drug addict." When shown leniency to obtain medical treatment, Karpovitch incurred additional charges rather than receiving treatment. Finally, necessity and proportionality are not only measured against the need to protect the public from future crime (or allow the offender to receive treatment) but also to punish the offender to a degree commensurate with the seriousness of his conduct. In these respects, the record fully supports the court's necessity and proportionality findings.

{¶14} With respect to the findings under R.C. 2929.14(C)(4)(a)-(c), the sentencing court found that all were applicable. Karpovitch contends that none of these findings are

---

1. Karpovitch cites *State v. Comer*, 2003-Ohio-4165, for the proposition that "[c]onsecutive sentences are reserved for the worst offenses and offenders." *Id.* at ¶ 21. This statement has no particular force, but was a reflection on the purposes and intent of S.B. 2, Ohio's "truth-in-sentencing" law which took effect in 1996. Whether an offender is the "worst" or has committed the "worst" offenses is not a recognized standard for the imposition of consecutive sentences under R.C. 2929.14(C) or for the appellate review of consecutive sentences under R.C. 2953.08(G)(2). *See State v. Glover*, 2024-Ohio-5194, discussed below.

Case Nos. 2024-L-064, 2024-L-065

supported by the record.  However, only one of the findings under division (C)(4) is required to sustain the imposition of consecutive sentences.  Therefore, we will only consider whether Karpovitch committed one or more of the multiple offenses while he was awaiting trial or sentencing.  *State v. Webb*, 2025-Ohio-793, ¶ 12 (3d Dist.) ("only one R.C. 2929.14(C)(4)(a)-(c) factor needs to be supported by the record"); *State v. Harris*, 2023-Ohio-1777, ¶ 21 (6th Dist.) (where one of the R.C. 2929.14(C)(4) conditions is satisfied it is not necessary to address arguments relating to the other conditions).

{¶15}  In the present case, the sentencing court found that "some of these offenses were committed while other cases were pending."  Karpovitch maintains that, although some of the offenses were committed while other cases were pending, "he did not commit the offenses at issue in this appeal while awaiting trial or sentencing."  Brief of Appellant at 15.  The State counters that, in Lake County Court of Common Pleas Case No. 22-CR-001158, Karpovitch was charged with and pled guilty to Possession of Cocaine and Illegal Manufacture of Drugs.  These charges were originally filed in Mentor Municipal Court on October 4, 2022, on which date Karpovitch was arraigned and entered a plea of not guilty.  The case was subsequently bound over to common pleas court and Karpovitch was not sentenced on these charges until March 1, 2024 (at the same hearing he was sentenced on the charges which are the subject of the present appeal).  Accordingly, Karpovitch was "awaiting trial" on these charges for the purposes of R.C. 2929.14(C)(4)(a) when he committed Aggravated Possession of Drugs (Appeal No. 2024-L-064) on July 9, 2023, as well as other crimes which are not the subject of this appeal.[2]  The fact that Karpovitch

2. Possession of Cocaine, Appeal No. 2024-L-065, was committed on September 9, 2022.

Case Nos. 2024-L-064, 2024-L-065

would be subsequently charged with the same offenses on October 26, 2023, is of no import. Karpovitch continued to be awaiting trial after transfer inasmuch as his bond was continued and he waived speedy trial rights. *State v. Sumlin*, 2025-Ohio-550, ¶ 23 (8th Dist.) ("'awaiting trial' … simply requires that the offender was waiting for trial, irrespective of whether trial has been formally set or an arraignment has been held").

### *First Assignment of Error: the Lower Court Performed the Proper Analysis for the Imposition of Consecutive Sentences*

{¶16} Finally, Karpovitch argues that the trial court did not engage in the requisite analysis in imposing consecutive sentences under *State v. Glover*, 2024-Ohio-5195. In *Glover*, different majorities of the Ohio Supreme Court rejected the proposition "that an appellate court should not 'focus on a defendant's aggregate prison term when … reviewing consecutive sentences'" but affirmed the proposition that "a court of appeals may not 'substitute its judgment for that of the trial court' when reviewing a sentence under the appellate-review statute." *Id.* at ¶ 41. Karpovitch construes *Glover* to mean "that the aggregate term of imprisonment must be considered when imposing and reviewing consecutive sentences." Thus, it is not sufficient for the sentencing court to be aware of the total sentence imposed, "[r]ather, the aggregate sentence must be considered in the specific context of the R.C. 2929.14(C)(4) factors." Brief of Appellant at 17-18.

{¶17} In *State v. Billings*, 2024-Ohio-6000 (11th Dist.), this Court interpreted the implications of *Glover* as follows:

> Because four justices in *Glover* seem to agree that an appellate court should consider or "focus" on a defendant's aggregate prison term when reviewing consecutive sentences (Fischer, J., Stewart, J., Donnelly, J., and Brunner, J.), we must somehow assess the aggregate term. In *State v. Jones*, 2020-Ohio-6729, ¶ 39, the Supreme Court of Ohio concluded that R.C. 2953.08(G)(2) does not permit a reviewing court to independently weigh the evidence and/or substitute its judgment for that of the trial court

as it relates to individual sentences imposed pursuant to R.C. 2929.11 and R.C. 2929.12. Still, because four justices in *Glover* determined an appellate court should focus on the aggregate prison term when reviewing "stacked," individual sentences, this assessment would necessarily require the reviewing court to take into account (or evaluate) each individual sentence that contributes to the aggregate. An exercise which we, as an appellate court, are statutorily unable to do. It is accordingly unclear how an appellate court might have any substantive input on the aggregate term of imprisonment issued by a trial court. This is a conundrum. Without more guidance, it is therefore equally unclear what a reviewing court's role would involve other than to assess whether the trial court focused upon the aggregate term of imprisonment in the consecutive sentencing process.

*Id.* at ¶ 41.

{¶18} We find no deficiency in the sentencing court's analysis in light of *Glover*. Simply by following, as the court did here, the statutory procedure for imposing consecutive sentences, a sentencing court necessarily considers the aggregate sentence in the context of the R.C. 2929.14(C)(4) factors (or findings). The statute requires a court to find that "the consecutive service is necessary to protect the public," not that any individual sentence is inadequate to protect the public. Similarly, the court is to find that "consecutive sentences are not disproportionate," not that the individual sentences are disproportionate. Making the foregoing findings with respect to individual sentences would be nonsensical. Accordingly, the record does support the court's consecutive findings with respect to the aggregate sentence imposed.

{¶19} Moreover, we find the situation in *Glover* to be wholly inapposite. The aggregate sentence in *Glover* was sixty years, over five times the maximum of any individual sentence that could have been imposed (absent gun specifications). Here, Karpovitch received a twenty-four-month sentence for third-degree Aggravated Possession of Drugs where the maximum sentence was thirty-six months and a six-year sentence for first-degree Possession of Cocaine where the maximum sentence was

eleven years. Thus, the aggregate sentence imposed in the present case did not even exceed what the sentencing court could have imposed for the first-degree felony by itself. Considered otherwise, the consecutive service in the present case is only two years longer than the concurrent service would have been. It is also worth noting that Karpovitch was being sentenced for seven felonies (one first-degree, one second-degree, two third-degree, and three fifth-degree felonies) and the potential aggregate sentence could have exceeded twenty-five years. Mindful that, as a reviewing court, we are not permitted to independently weigh the evidence and/or substitute our judgment for that of the trial court as it relates to individual sentences, we do not hesitate to find that the record in the present case supports the aggregate sentence imposed.

{¶20} The first assignment of error is without merit.

***Second Assignment of Error: Judicial Bias and Due Process of Law***

{¶21} In the second assignment of error, Karpovitch claims that his sentence was the product of judicial bias and emotion rather than consideration of the appropriate sentencing factors.

{¶22} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 2002-Ohio-2128, ¶ 34. The Supreme Court of Ohio has "described judicial bias as 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *Id.,* quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

Case Nos. 2024-L-064, 2024-L-065

{¶23} In the context of felony sentencing, "Ohio [appellate] courts have held that a judicial bias claim may be interpreted 'as an argument that [the defendant's] sentence is contrary to law based on a due process violation.'" *State v. Johnson*, 2019-Ohio-4668, ¶ 26 (8th Dist.); *State v. Power*, 2013-Ohio-4254, ¶ 22 (7th Dist.) ("biased comments at sentencing can be reviewed for due process violations"). "Judges are presumed not to be biased or prejudiced toward those appearing before them, and a party alleging bias or prejudice must present evidence to overcome the presumption." *State v. Smith*, 2024-Ohio-2187, ¶ 10 (1st Dist.), quoting *State v. Sharp*, 2020-Ohio-3497, ¶ 11 (12th Dist.). "The evidence must demonstrate an appearance of bias or prejudice compelling enough to overcome the presumption of judicial integrity." *Id.*, quoting *Sharp* at ¶ 11.

### *Second Assignment of Error: the Lower Court Did Not Demonstrate Judicial Bias*

{¶24} Karpovitch "submit[s] that the trial court's sentence was an emotional response to, *inter alia*, comments made by Appellant and his counsel it found offensive, his animosity toward Appellant, and his view and frustration with the prison system based on anecdotal stories and extrajudicial sources," and, as such, it was contrary to law. Brief of Appellant at 20-21.

{¶25} Below are a sampling of comments from the transcript of the February 1, 2024 hearing relied upon by Karpovitch:

> THE COURT: What did you mean when you told Miss Wehagen in regards to these offenses when advised you did not feel bad about this; what did you mean?
>
> …
>
> THE DEFENDANT: I don't feel like I committed crimes, not any drugs. I feel like I'm using drugs, with all due respect I don't mean to disrespect the Court in any fashion, I didn't hurt anybody, I never stole from nobody.

…

THE COURT: So you think, in essence what you're telling me is because the state legislature determined it's illegal, so what … it ain't harming nobody so why should you care, that's why you don't feel bad about it?

THE DEFENDANT: It's not really that I just, so if an adult makes a decision to partake in drug use, I mean doesn't the burden of use or abuse, doesn't it fall on that individual? Look, I don't have --

THE COURT: Well, I think it falls on these four sitting back here too, right? [Indicating family who spoke on Karpovitch's behalf.]

THE DEFENDANT: It could.

THE COURT: Maybe when you're going 85 miles per hour or more down Route 2 darting in and out of traffic, maybe that has an impact on other people too; you think so?

THE DEFENDANT: Yeah. Yes, Your Honor.

THE COURT: So if you quit being so God damn selfish maybe you can see the bigger picture. … Maybe cause the whole tone of you in this presentence report and as you stand here is woe is me you know because the cops went out to get me and I really didn't do anything and I don't feel bad about anything, that's what I get from you.

…

MR. PETERSON: You see I've spent a lot of time with Jerry over what you're talking about and what he feels is that he's addicted to drugs. He knows he's addicted and he feels that because of that disease that he has that he should, I don't want to say should not be prosecuted because I told him it's against the law, you can't do that but he's been fighting that his whole life but it's so hard for him to see why he should be punished for a disease and I may not be saying that right, I don't know, maybe Jerry could say it better than me but I think that's the attitude that I'm getting from him not only today but in the past. He just feels that he's got this illness so why am I here, why am I being punished for it and not in a hospital or something like that and I don't want judge to --

THE COURT: You know why, I mean do you want to know why?

MR. PETERSON: Yeah.

THE COURT: All right. Because he's part of the problem. … A big part of the problem, okay. So I'm sick of this woe is me nonsense, okay, because he's just using drugs. … Every God damn day out here it's destroying what's going on but nobody should be responsible for it; is that what we're all saying here?

…

MR. PETERSON: Yeah, I understand how you feel, I really do. I don't know what the damn answer is, I really don't know what the answer is. … I really never met a client like this that feels the way he does. You know I've been doing this longer than you actually and I've had so many so many drug cases, this is the first time I've come across an attitude like this. You know what we are going to do, we're going to send him to prison, he's going to get out and do the same thing.

THE COURT: Well, that's up to him that's not up to me.

MR. PETERSON: No, you've got to send him to prison, maybe that would help him.

THE COURT: You know what's going to happen when he goes to prison? … Because of the ineptness of the governor and attorney general and Department of Rehabilitation and Corrections he'll go the first day and get the ability to use drugs every day he's there because they won't do their job, okay. Now he can either do that or he cannot do that. So this nonsense that sending him to prison is not going to do no good, that's up to him that's not up to me. It's not even up to DeWine or his lackey at the Department of Corrections, he determines what he's going to do. So don't tell me that sending him to prison is going to do no good cause he's going to do the same thing when he comes out, that's up to him not up to me. … That's the dumbest thing I've ever heard, dumbest thing I've ever heard.

…

THE DEFENDANT: Your Honor, I'm going to learn a lesson today whether I go to prison or not I'm going to learn a lesson.

THE COURT: See, I don't know whether you're going to learn a lesson because what you're telling me it's really [none] of society's business it's your business. My guess is you're going to come out and do the same thing because it's nobody's God damn business.

THE DEFENDANT: I did struggle with that. No, sir, Your Honor.

THE COURT: Then maybe go to a continent on Africa where everybody is doing whatever they want to then nobody will bother you, okay, maybe that's the solution.

{¶26} At the subsequent hearing on March 1, 2024, the sentencing court made the following statement:

THE COURT: I'll tell you what, I was sick of it on February 1st and I'm sick of it now, okay, because everything that you say, everything that you do revolves around you playing the part of the hapless drug addict who can't do anything about it and I'm sick and tired of it. The reason that you don't do anything about it is because you don't do anything about it. In the last, in the last two days two separate cases I've had two young ladies that were terrible, terrible heroin addicts who've been off it for the space of about four or five years so what they did was they did something about it. You don't want to do anything about it. You like to wallow in your own self pity. That's what you do best. Then you come here and tell me how mad you were last week when I revoked your bond and then how all of a sudden Billy [from AA] came in and how you see the light, that's nonsense. Go on, roll your eyes and shake your head, I don't care, okay, cause you've earned the position you're in … which is for me to never believe another word you ever say, you've earned that. … And I have observed and concluded that you're the ultimate con man.

{¶27} We do not find that the foregoing demonstrates that the sentencing court was biased against Karpovitch or his attorney or that the sentence imposed was the product of emotion rather than consideration of the appropriate sentencing factors. Certainly, the court expressed its opinions forcefully but the opinions themselves were responsive to the positions stated by Karpovitch and his attorney and did not betray any particular ill-will or animus against Karpovitch or his attorney. It should especially be emphasized that neither the court's statements nor actions indicate that it had prejudged

or predetermined Karpovitch's sentence based on extraneous considerations. After the February 1 hearing and despite the court's comments regarding the seriousness of Karpovitch's conduct, personal responsibility, and Ohio's executive leadership, the court continued the sentencing hearing to allow Karpovitch to obtain medical treatment (counsel only requested additional time before reporting to prison). At the same time the court made it clear that it would consider the three-year recommended sentence if he would demonstrate a better attitude and cease abusing drugs. Karpovitch did neither. At the March 1 hearing and despite Karpovitch's abuse of the court's clemency, the court imposed a sentence that, as discussed above, was well-supported by the record and that was moderate in its severity relative to the sentence that could have been imposed. We, therefore, fail to find evidence of bias.

{¶28} The second assignment of error is without merit.

***Third Assignment of Error: Reagan Tokes Notifications***

{¶29} Under the third assignment of error, Karpovitch argues that the sentencing court failed to advise him at sentencing of the total aggregate sentence imposed and failed to provide him with the required Reagan Tokes notifications. We agree in part.

{¶30} In the present case, Karpovitch was sentenced to a definite minimum term of six years for Possession of Cocaine which constitutes a qualifying felony of the first degree. Ohio's indefinite sentencing statute provides:

> The court imposing a prison term on an offender pursuant to division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree shall sentence the offender, as part of the sentence, to the maximum prison term determined under division (B) of this section. The court shall impose this maximum term at sentencing as part of the sentence it imposes under section 2929.14 of the Revised Code, and shall state the

Case Nos. 2024-L-064, 2024-L-065

minimum term it imposes under division (A)(1)(a) or (2)(a) of that section, and this maximum term, in the sentencing entry.

R.C. 2929.144(C).

{¶31} The relevant formula for determining the maximum prison term in the present case is the following:

> ***If the offender is being sentenced for more than one felony***, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

R.C. 2929.144(B)(2) (emphasis added).

***Third Assignment of Error: the Lower Court Failed to State the Minimum and Maximum Terms as Required by R.C. 2929.144(C)***

{¶32} Applied to the present circumstances, Karpovitch's minimum term is eight years – six years (mandatory) for Possession of Cocaine to be served consecutively with two years for Aggravated Possession of Drugs. The maximum term is eleven years – eight years plus three years (being half of the longest minimum term). Contrary to R.C. 2929.144(C), the sentencing court did not impose the maximum term "at sentencing as part of the sentence," and did not state the minimum and maximum term "in the sentencing entry." At sentencing, the court advised Karpovitch that the sentence for Possession of Cocaine was "an definite minimum of 6 years up to an indefinite maximum of 9 years." When pressed for clarification, the court stated, "there's going to be a 2 year sentence or a 24 month sentence [for Aggravated Possession of Drugs] followed by a 6

to 9 year sentence [for Possession of Cocaine] and all the rest are concurrent." Finally, the court affirmed defense counsel's statement that it was an eight-year total. In the Judgment Entry of Sentence for Possession of Cocaine, the court ordered Karpovitch to "serve an indefinite prison term of a minimum of six (6) years to a maximum of nine (9) years in prison," which "shall be served consecutive to the prison term imposed [for Aggravated Possession of Drugs]." Neither at sentencing nor in the sentencing entry did the court directly and explicitly state that the minimum term was eight years or that the maximum term was eleven years. *State v. Chambers*, 2024-Ohio-3341, ¶ 213 (6th Dist.) ("[t]he stated minimum term and maximum term for an offense must be imposed at the sentencing hearing and included in the sentencing entry"); *State v. Rasheed*, 2024-Ohio-3424, ¶ 95 (2d Dist.) ("[i]n addition to orally informing the defendant of the minimum prison term and the maximum prison term imposed at the time of sentencing, the prison terms must also be included in the judgment entry").

{¶33} The State argues that there was compliance with R.C. 2929.144(C) because the convictions for Possession of Cocaine and Aggravated Possession of Drugs were separate cases. The sentencing court did state on the record at sentencing and in the sentencing entry that the sentence for Possession of Cocaine was a minimum of six years up to a maximum of nine years. However, Aggravated Possession of Drugs was not subject to the Reagan Tokes Law. "While the trial court did pronounce a sentence [for Aggravated Possession of Drugs] at the same sentencing hearing, the cases remained separate and a separate sentencing judgment entry was docketed for each case accordingly." Brief of Appellee at 13. The State's argument is without foundation and is contrary to the plain language of R.C. 2929.144(B)(2) which speaks of the offender

"being sentenced for more than one felony" without regard as to whether the multiple felonies are part of the same or different cases. Regardless of whether the cases remained separate, their sentences are to be served consecutively and nowhere in the record is the aggregate sentence stated completely, except by inference. According to the formula in R.C. 2929.144(B)(2), calculation of the aggregate sentence when one of the sentences is indefinite is not a matter of simple arithmetic – one does not simply add the definite term to the minimum and maximum indefinite terms. Moreover, the Reagan Tokes law requires the entire aggregate sentence to be stated explicitly on the record where an offender was being sentenced for more than one felony.

{¶34} This Court has previously rejected a similar argument regarding the aggregate nature of the maximum and minimum terms for the purposes of the Reagan Tokes law. "Under the Reagan Tokes Act, the maximum term imposed is not offense specific." *State v. Miles*, 2020-Ohio-6921, ¶ 26 (11th Dist.). Rather, the trial court is required "to aggregate the minimum and definite consecutive terms imposed for each … offense … in order to calculate the overall maximum term." *Id.* In *Miles*, "it [was] apparent from [the sentencing] entries and the transcript of the sentencing hearing that the trial court did not properly advise Miles of the minimum terms … and did not properly calculate and advise Miles of his maximum prison term." *Id.* Inasmuch as Reagan Tokes is not case as well as offense specific, the "matter [should be] remanded for a limited resentencing hearing consistent with this opinion." *Id.* at ¶ 31.

{¶35} We acknowledge that *Miles*, unlike the present case, involved consecutive sentences resulting from a single prosecution. We further acknowledge that the interpretation and application of the Reagan Tokes law has been described as

Case Nos. 2024-L-064, 2024-L-065

"complicated and confusing." *State v. Delvallie*, 2022-Ohio-470, ¶ 2 (8th Dist.). Although not raised by the parties, it merits consideration that there is authority, contrary to the present case, which holds that R.C. 2929.144(B)(2) does not apply to consecutive sentences resulting from different prosecutions, i.e., with separate "case files."

***Third Assignment of Error: Contrary Authority from the Eighth District Is Not Persuasive***

{¶36} The Eighth District Court of Appeals has construed R.C. 2929.144(B)(2) and (C) so as to only apply when consecutive sentences within a single case or indictment are ordered to be served consecutively. Stated otherwise, when, as here, sentences from different cases are ordered to be served consecutively, these provisions have no application under the Eighth District's interpretation.

{¶37} Second, the Eighth District purports to rely on the "plain language" of the statute to reach this conclusion. In fact, the Eighth District's analysis relies on considerations extraneous to these provisions, such as what constitutes a case file or final order, to undermine their plain meaning. Finally, the distinction made by the Eighth District between consecutive sentences imposed in a single case as opposed to multiple cases has been rejected in the context of R.C. 2929.14(C)(4), despite that statute having substantially similar language to R.C. 2929.144(B)(2) and (C).

{¶38} In *State v. Bond*, 2022-Ohio-1487 (8th Dist.), the Eighth District held that "R.C. 2929.144(B)(2) only applies to consecutive prison terms imposed within a single case." *Id.* at ¶ 13; *accord State v. Perez*, 2023-Ohio-83, ¶ 33 (8th Dist.). If we were to adopt this position in the present case, the State's position that the trial court was not required to state the aggregate "maximum term" required by R.C. 2929.144(C) would have merit. *See Bond* at ¶ 15 ("[n]othing in R.C. 2929.144(C) suggests that the maximum

term stated in the sentencing entry may include prison terms imposed in other cases in the calculation"). We do not find the Eighth District's reasoning for not applying R.C. 2929.144(B)(2) to indefinite consecutive sentences imposed in different cases to be convincing.

{¶39} At the start, we note that the implications of whether R.C. 2929.144 applies when sentences from different cases are to be served consecutively or only when consecutive sentences are imposed in the same case is more consequential in *Bond* and *Perez* than in the present case. Here, the underlying issue is whether the trial court must state the aggregate term imposed pursuant to R.C. 2929.144(C). In *Bond* and *Perez*, the applicability of R.C. 2929.144(B) affects the aggregate maximum term imposed. In *Bond*, the defendant, *inter alia*, received indefinite sentences of four to six years in two different cases which were ordered to be served consecutively. The trial court determined his aggregate sentence by adding the two minimum terms together and adding the two maximum terms together rather than applying R.C. 2929.144(B)(2). Thus, the aggregate sentence was between eight and twelve years[3]. If R.C. 2929.144(B)(2) had been applied, the aggregate sentence would have been eight to ten years. The result would be similar whenever indefinite sentences are served consecutively. As a practical matter, the aggregate maximum term of indefinite sentences will always be lower if R.C. 2929.144(B)(2) is applied instead of simply determining the sum of all maximum terms.[4]

---

3. In fact, Bond's aggregate sentence was twelve to sixteen years on account of gun specifications. For the sake of discussion, the gun specifications are excluded from the calculations.
4. Because Karpovitch's sentence in the present case involves a definite sentence (two years) and an indefinite sentence (six to nine years), the aggregate sentence is eight to eleven years regardless of whether the definite sentence is simply added to the minimum and maximum term of the indefinite sentence or whether the formula in R.C. 2929.144(B)(2) is applied.

Case Nos. 2024-L-064, 2024-L-065

### The Plain Language of R.C. 2929.144(B)(2) Does Not Make a Distinction Between Indefinite Sentences Belonging to the Same or Different Cases

{¶40} Ironically, the Eighth District relies on the same "plain language" of the statute to conclude that R.C. 2929.144(B)(2) does not apply that we rely on to conclude that it does apply. According to its own terms, R.C. 2929.144(B)(2) applies:

> [i]f the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree[, i.e., an indefinite sentence], and if the court orders that some or all of the prison terms imposed are to be served consecutively.

Under this court's reading, the statute clearly makes no distinction at all between sentences imposed in a single case or in multiple cases. Rather, the material circumstances are whether consecutive sentences are being imposed and whether one of the sentences is an indefinite sentence. The Eighth District reads the same language and concludes "[n]othing in R.C. 2929.144(B)(2) authorizes the court to use an indefinite prison term imposed on a qualifying felony in one case to calculate the indefinite prison term on a qualifying felony in a different case." *Bond* at ¶ 13. We disagree with the Eighth District's analysis of the plain language.

{¶41} The plain language of R.C. 2929.144(B)(2) applies as much to qualifying felonies from different cases as it does to qualifying felonies from the same case. No further authorization is needed because the statute, as drafted, is equally applicable in either situation. Although the Eighth District purports to rely on the plain meaning of the statute, its interpretation relies on context and other considerations neither expressed nor implied in the language of the statute itself. *Id.* at ¶ 33 (Gallagher, A.J., concurring) ("when read in context, it is apparent that the calculation of a 'maximum term' under R.C.

2929.144(B)(2) does not contemplate a global sentence being imposed across case files").

{¶42} The majority opinion in *Bond* emphasizes the fact "that two separate cases must have two separate journal entries to comply with Crim.R. 32(C) and [*State v.*] *Baker*[, 2008-Ohio-3330]." *Bond* at ¶ 14. The court seems to suggest that reading R.C. 2929.144(C) to require a court to state the aggregate sentence of different cases would violate some principle underlying Crim.R. 32(C) and *Baker*:

> If the legislature had intended to allow courts to include indefinite prison terms in separate cases when calculating consecutive sentence under R.C. 2929.144(B)(2), it could have done so, but it did not. In accordance with *Baker* and Crim.R. 32(C), each case has its own sentencing entry, and the trial court may order the sentences in two or more cases to be served consecutively. But the fact that the trial court in this case ordered the concurrent sentences within each case to be served consecutively does not change the calculation of the maximum prison term imposed in each individual case.

*Id.* at ¶ 15.

### R.C. 2929.14(C)(2) Which Has Substantially Similar Language to R.C. 2929.144(B)(2) Does Not Make a Distinction for Consecutive Sentences in Different Cases

{¶43} As noted above, we do not find compelling the Eighth District's claim that, without express legislative authorization, the plain language of R.C. 2929.14(B)(2) and (C) precludes their application to consecutive sentences in different cases. Consider the Eighth District's reasoning in the context of the underlying consecutive sentencing statute: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court [makes certain findings]." R.C. 2929.14(C)(4). As with R.C. 2929.144(B)(2), nothing in R.C. 2929.14(C)(4) authorizes or even suggests that a sentencing court may include prison terms in separate cases when calculating consecutive sentences. Alternatively, it

Case Nos. 2024-L-064, 2024-L-065

could be said that nothing in R.C. 2929.14(C)(4) indicates that the findings are necessary when sentences from different cases are to be served consecutively. Despite this lack of express legislative sanction, the courts have repeatedly affirmed the applicability of R.C. 2929.14(C)(4) to the imposition of consecutive sentences from separate cases without the slightest regard for Crim.R. 32(C) or the concept of the "case file." *See State v. Wright*, 2024-Ohio-3142, ¶ 20 (9th Dist.) ("R.C. 2929.14(C) does not differentiate between imposing consecutive sentences on multiple counts in a single case and imposing consecutive sentences on multiple counts in separate cases"); *State v. McIntoush*, 2024-Ohio-2284, ¶ 16, fn. 4 (6th Dist.) ("[t]he same requirements for a trial court to impose consecutive sentences within a case apply to consecutive sentences from two different cases, and a trial court need not make a separate set of findings"); *State v. Gossett*, 2019-Ohio-3284, ¶ 8 (8th Dist.) ("[t]he R.C. 2929.14(C) findings are also required when a court imposes consecutive sentences in separate cases").

{¶44} If the plain language of R.C. 2929.14(C) allows a sentencing court to order sentences imposed in different cases to be served consecutively, what grounds exist for construing R.C. 2929.144(B)(2) or (C) differently? The Eighth District does not dispute that sentences from different cases may be imposed consecutively, but incongruously maintains that R.C. 2929.144(B)(2) and (C) only apply to consecutive indefinite sentences within a single case. The language of the statutes does not justify differing applications.

{¶45} Just as critical as the question why *would* the statutes be construed differently is the question why *should* they be construed differently. Is there any reason why the legislature might want indefinite consecutive sentences imposed within a single case to be served differently from indefinite consecutive sentences imposed on different

cases? As noted above, the practical result of not applying R.C. 2929.144(B)(2) to indefinite consecutive sentences on different cases is that the maximum terms will be longer. Is there any indication that the legislature desired this result? We do not believe so. The concurring opinion in *Bond* recognized that "the formula language in R.C. 2929.144 is at best confusing," and opines "[t]his is the result of rushed legislative enactment passed in an end of the year 'lame duck' session without benefit of full scrutiny." *Bond*, 2022-Ohio-1487, at ¶ 38 (8th Dist.) (Gallagher, A.J., concurring). In all probability, when drafting the Reagan Tokes Act the legislature did not consider the issue before this court, i.e., whether R.C. 2929.144(B)(2) would only apply to indefinite consecutive sentences from different cases as well as from the same case. In the absence of any legislative history or intent to the contrary, we will apply the plain language of R.C. 2929.144(B)(2) and (C) as drafted, just as the plain language of R.C. 2929.14(C) is applied as drafted, without distinction as to whether the sentences to be served consecutively are part of the same or different cases.

### Third Assignment of Error: Whether the Lower Court Failed to Provide the Notifications Required by R.C. 2929.144(C)

{¶46} Karpovitch's second argument under this assignment of error is that the sentencing court failed to give the following Reagan Tokes notifications at the sentencing hearing:

> At the sentencing hearing, the court, before imposing sentence, shall do all of the following:
>
> …
>
> If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

Case Nos. 2024-L-064, 2024-L-065

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

R.C. 2929.19(B)(2)(c). This Court has held that the failure to provide the foregoing notifications is cause to remand for resentencing. *State v. Amin*, 2023-Ohio-3761, ¶ 18 (11th Dist.) ("[w]hen the court fails to give the indefinite sentence notifications, it has been the practice of this and other courts to remand the case for resentencing"); *Miles* at ¶ 27-29.

{¶47} In the present case, the sentencing court gave the following advisements with respect to indefinite sentencing:

> Now on your definite minimum there is a presumption you should be released after that minimum term. Whether you serve any of the additional up to the indefinite maximum is a determination made by the Department of Corrections based on your behavior and activity while you are in prison.

{¶48} The State relies on several cases which have held that the indefinite sentencing advisements do not have to be given verbatim in the statutory language and have affirmed similarly abbreviated advisements. *State v. Lorenzana*, 2024-Ohio-2900, ¶ 86 (8th Dist.); *State v. Moore*, 2024-Ohio-4536, ¶ 15 (3d Dist.).

{¶49} Given the determination that the sentencing court failed to comply with R.C. 2929.144(C) and that this case must be remanded for a limited resentencing with respect to indefinite sentencing, it is not necessary for this Court to decide whether the foregoing satisfied its obligations under R.C. 2929.19(B)(2)(c). At resentencing, the court will again be in a position where the indefinite sentencing notifications must be given. The court may note that, "[w]hile [it] is not required to recite the statutory language verbatim in providing the notifications to the defendant …, the record must nonetheless reflect that each of the necessary notifications were provided." (Citation omitted.) *State v. Chisenhall*, 2024-Ohio-1918, ¶ 43 (12th Dist.).

{¶50} To the extent indicated above, the third assignment of error is with merit.

**Fourth Assignment of Error: Mandatory Fines for Possession of Drugs**

{¶51} In the fourth and final assignment of error, Karpovitch argues that the sentencing court erred by imposing a mandatory fine as part of his sentence for

Possession of Cocaine[5] when it did not impose a mandatory fine for Aggravated Possession of Drugs on account of indigency. R.C. 2925.11(E)(1)(a) ("[i]f the violation is a felony of the first, second, or third degree, the court shall impose upon the offender the mandatory fine specified for the offense under division (B)(1) of section 2929.18 of the Revised Code unless, as specified in that division, the court determines that the offender is indigent"). "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." R.C. 2929.18(B)(1).

{¶52} The State maintains that the imposition of the mandatory fine for Possession of Cocaine was not contrary to law inasmuch as "[a]n affidavit was never filed with the trial court alleging that Appellant is unable to pay the mandatory fine." Brief of Appellee at 16-17; *see State v. Gipson*, 80 Ohio St.3d 626 (1998), syllabus ("[t]he requirement … that an affidavit of indigency must be 'filed' with the court prior to sentencing means that the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the clerk of court, *i.e.*, time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision").

{¶53} Karpovitch argues in the alternative that "[t]he failure to file an affidavit attesting to a defendant's indigency establishes ineffective assistance of counsel when

---

5. We note that the amount of the fine imposed for Possession of Cocaine, $7,500.00, appears contrary to R.C. 2929.18(B)(1) ("[f]or a first … degree felony violation of any provision of Chapter 2925. … of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section"), and R.C. 2929.18(A)(3)(a) ("[f]or a felony of the first degree, not more than twenty thousand dollars").

the record shows a reasonable probability that the trial court would have found the defendant indigent." *State v. Murray*, 2023-Ohio-3762, ¶ 17 (11th Dist.). In the present case, we find that there was a reasonable probability that the trial court would have found the defendant indigent given trial counsel's stated intention of filing an affidavit at the change of plea hearing, Karpovitch's financial condition as reported in the presentence investigation report, and the successful avoidance of the mandatory fine for Aggravated Possession of Drugs. Accordingly, the mandatory fine imposed in connection with Possession of Cocaine is vacated.

{¶54} The fourth assignment of error is with merit.

{¶55} For the foregoing reasons, Karpovitch's sentences are affirmed in part and reversed in part. This matter is remanded for the purposes of a limited resentencing hearing to provide the indefinite sentencing notifications in accordance with R.C. 2929.144(C) and R.C. 2929.19(B)(2)(c) and to reconsider the imposition of a mandatory fine in connection with Possession of Cocaine (Appeal No. 2024-L-065). In all other respects, Karpovitch's sentences are affirmed. Costs to be taxed between the parties equally.


JOHN J. EKLUND, J., concurs,

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.


_____

Case Nos. 2024-L-064, 2024-L-065

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶56} I dissent from the majority's determination that the trial court was required to advise Karpovitch of the total aggregate prison sentence imposed in his multiple, unconsolidated criminal cases. In all other respects, I concur with the majority's judgment and opinion.

{¶57} The trial court held a joint sentencing hearing on six unconsolidated cases pending against Karpovitch. Two of these sentences, those before us on appeal, were ordered to be served consecutively. (The sentences in the other four cases were ordered to run concurrently.)

{¶58} In Case No. 794, for Aggravated Possession of Drugs, a (nonqualifying) felony of the third degree, the trial court imposed a definite sentence of 24 months in prison.

{¶59} In Case No. 1133, for Possession of Cocaine, a (qualifying) felony of the first degree, the trial court imposed an indefinite sentence of a minimum of six years to a maximum of nine years in prison.

{¶60} At sentencing, the trial court advised that the 24-month sentence in Case No. 794 would be followed by the six- to nine- year sentence in Case No. 1133. Defense counsel asked, "So it's an 8 year total?" The court answered, "Correct." The court issued a separate sentencing entry in each unconsolidated case.

{¶61} Under Ohio's indefinite sentencing statute ("the Reagan Tokes Law"), the court imposing a prison term for qualifying first- and second-degree felony offenses "shall sentence the offender, as part of the sentence, to the maximum prison term determined

under division (B) of this section." R.C. 2929.144(C); *State v. Hacker*, 2023-Ohio-2535, ¶ 1. Division (B) sets forth how to calculate the maximum prison term depending on whether the offender is being sentenced for one felony, for more than one felony with consecutive prison terms, or for more than one felony with concurrent prison terms. R.C. 2929.144(B)(1), (2), (3). "The court shall impose this maximum term at sentencing as part of the sentence it imposes under section 2929.14 of the Revised Code, and shall state the minimum term it imposes under division (A)(1)(a) or (2)(a) of that section, and this maximum term, in the sentencing entry." R.C. 2929.144(C).

{¶62} The majority concludes that under the Reagan Tokes Law the trial court was required, at sentencing, to impose an aggregate maximum term of eleven years and, in the sentencing entries, to state an aggregate minimum term of eight years and a maximum term of eleven years. In so holding, the majority presumes that R.C. 2929.144(B)(2) applies here. R.C. 2929.144(B)(2) provides:

> If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under [R.C. 2929.14(A)(1)(a) or (2)(a)] for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

The majority rejects the State's argument that the two cases remained unconsolidated with a separate sentencing entry docketed for each case and, instead, concludes that the plain language of division (B)(2) speaks of the offender "being sentenced for more than

one felony" without regard to whether the multiple felonies are part of the same or different cases.

{¶63} However, nothing in R.C. 2929.144(B)(2) authorizes the court to use a definite prison term imposed on a nonqualifying felony in one case to calculate the indefinite prison term on a qualifying felony in a different case, when those cases have not been consolidated for sentencing purposes. And nothing in R.C. 2929.144(C) suggests that the maximum term stated in the sentencing entry of one case may include prison terms imposed in other unconsolidated cases in the calculation. "Also, there is no language in the statute providing for an 'aggregate indefinite sentence' or an 'aggregate maximum term.'" *State v. Bond*, 2022-Ohio-1487, ¶ 31 (8th Dist.) (S. Gallagher, J., concurring).

{¶64} The trial court held a joint sentencing hearing, but the cases remained unconsolidated. The court separately sentenced Karpovitch in each case and issued a separate sentencing entry for each case. Because the Reagan Tokes Law did not apply to the third-degree felony in Case No. 794, the trial court imposed a definite sentence of 24 months in prison. And because there was only one qualifying felony in Case No. 1133, the trial court imposed a minimum term of six years and applied R.C. 2929.144(B)(1) rather than (B)(2) when calculating the maximum term of nine years. R.C. 2929.144(B)(1) provides:

> If the offender is being sentenced for one felony and the felony is a qualifying felony of the first or second degree, the maximum prison term shall be equal to the minimum term imposed on the offender under [R.C. 2929.14(A)(1)(a) or (2)(a)] plus fifty per cent of that term.

{¶65} I would hold that the trial court's decision to apply R.C. 2929.144(B)(1) was proper and that the trial court was not required under R.C. 2929.144(C), at the joint

sentencing hearing or in either of the sentencing entries, to state that Karpovitch's aggregate sentence was a minimum of eight years up to a maximum of eleven years. The fact that the trial court ordered the sentence in Case No. 794 and the sentence in Case No. 1133 to be served consecutively does not change the calculation of the maximum prison term imposed in Case No. 1133.

{¶66} In addition to the plain language of the statute, I find support for this outcome from two cases decided by the Eighth Appellate District: *Bond*, 2022-Ohio-1487 (8th Dist.) and *State v. Perez*, 2023-Ohio-83 (8th Dist.).

{¶67} In *Bond*, the defendant pleaded guilty to multiple offenses in multiple unconsolidated cases. In Case One, the trial court imposed a definite sentence of nine months on a non-qualifying felony to run concurrently with an indefinite sentence of four to six years on a qualifying felony. In Case Two, the trial court imposed a definite sentence of 27 months on a non-qualifying felony to run concurrently with an indefinite sentence of four to six years on a qualifying felony. The trial court ordered the sentences in these two cases to be served consecutively and consecutive to an additional four years for firearm specifications. *Bond* at ¶ 3-6. Although not noted in the opinion, this amounts to an aggregate prison term of 12 years to 16 years.

{¶68} On appeal, the defendant argued that the trial court failed to comply with R.C. 2929.144(B)(2) when it ordered him to serve the two indefinite prison terms consecutively. *Id*. at ¶ 12. The essence of his argument was that the trial court should have joined the two cases for purposes of calculating his maximum term, which would have resulted in a minimum term of 12 years and a maximum term of 14 years.

{¶69} The Eighth District upheld the imposition of sentence, concluding that R.C. 2929.144(B)(2) only applies to consecutive prison terms imposed within a single case:

We agree that when one or more qualifying felonies are ordered to be served consecutively, R.C. 2929.144(B)(2) only allows the court to impose fifty percent of the longest minimum term for the most serious felony being sentenced and does not allow the court to impose consecutive indefinite prison terms. However, R.C. 2929.144(B)(2) only applies to consecutive prison terms imposed within a single case. Nothing in R.C. 2929.144(B)(2) authorizes the court to use an indefinite prison term imposed on a qualifying felony in one case to calculate the indefinite prison term on a qualifying felony in a different case. R.C. 2929.144(B) requires the court imposing a prison term on an offender under R.C. 2929.14(A)(1)(a) or (2)(a) for a felony of the first or second degree to determine "the maximum prison term that is part of the sentence." R.C. 2929.144(C) further requires the court to "impose this maximum term at sentencing as part of the sentence it imposes under [R.C. 2929.14]," and to state this maximum "in the sentencing entry."

In *State v. Baker*, 2008-Ohio-3330, the Ohio Supreme Court held that a judgment of conviction is not a final, appealable order under R.C. 2505.02 unless it complies with Crim.R. 32(C). *Id.* at ¶ 10. In accordance with Crim.R. 32(C), the court in *Baker* explained that "[o]nly one document can constitute a final appealable order." *Id.* at ¶ 17. And, the final order in a criminal case must "'be reduced to writing signed by the judge and entered by the clerk.'" *Id.*, quoting *State v. Tripodo*, 50 Ohio St.2d 124 (1977). The journal entry must include all of the convictions in the case as well as the sentences imposed on each of the convictions in the case. *Baker* at syllabus. It follows, therefore, that two separate cases must have two separate journal entries in order to comply with Crim.R. 32(C) and *Baker*.

Nothing in R.C. 2929.144(C) suggests that the maximum term stated in the sentencing entry may include prison terms imposed in other cases in the calculation. If the legislature had intended to allow courts to include indefinite prison terms in separate cases when calculating consecutive sentence under R.C. 2929.144(B)(2), it could have done so, but it did not. In accordance with *Baker* and Crim.R. 32(C), each case has its own sentencing entry, and the trial court may order the sentences in two or more cases to be served consecutively. But the fact that the trial court in this case ordered the concurrent sentences within each case to be served consecutively does not change the calculation of the maximum prison term imposed in each individual case.

The trial court sentenced Bond on each count and imposed a maximum prison term as part of the sentence in each case, CR-19-643079-

B and CR-19-643142-A. The court then ran the sentences within each case concurrently. Therefore, R.C. 2929.144(B)(3) rather than (B)(2) applied to determine the maximum prison term imposed as part of the sentence. In each case, the court sentenced Bond to an indefinite prison term of four to six years in addition to the sentence imposed on the attendant firearm specifications. After making the necessary findings, the trial court ordered the concurrent sentences in each separate case to be served consecutively. The trial court also imposed a sentence of six months for receiving stolen property in CR-19-639466-A, which was run concurrently with the other two cases.

The court issued separate sentencing entries in each case as required by *Baker* and Crim.R. 32(C). And, in accordance with R.C. 2929.144(C) the court stated the minimum term imposed under R.C. 2929.14(A)(1)(a) or (2)(a) and the maximum term determined pursuant to R.C. 2929.144 in each case. We, therefore, find that the trial court complied with all applicable sentencing provisions and did not commit plain error.

*Bond*, 2022-Ohio-1487, at ¶ 13-17.

{¶70} In *Perez*, the defendant also pleaded guilty to multiple offenses in multiple unconsolidated cases. The trial court imposed indefinite prison terms on one qualifying felony in each of three separate cases: Case A, four to six years; Case B, two to three years; Case C, five to seven and one-half years. The trial court ordered the sentences in these three cases to be served consecutively and consecutive to an additional four years for firearm specifications. As noted by the Eighth District, this amounted to an aggregate sentence of 15 years to a maximum of 20.5 years. *Perez*, 2023-Ohio-83, at ¶ 18 (8th Dist.).

{¶71} On appeal, the defendant argued that the trial court erred by imposing indefinite prison terms on one qualifying felony in each of the three cases instead of imposing an indefinite prison term on only one qualifying felony overall. *Id*. at ¶ 33. The essence of his argument was that the trial court should have joined the three cases for purposes of calculating his maximum term, which would have resulted in an aggregate

minimum term of 15 years up to a maximum term of 17.5 years. The defendant attempted to distinguish his case from *Bond* by arguing that his three cases were indicted on the same day and are so intertwined that the holding in *Bond* and the plain reading of R.C. 2929.144(B)(2) should not apply. *Id*. at ¶ 34. The Eighth District disagreed, noting that "[w]hile the three separate cases were indicted on the same date, they address offenses that occurred over the course of seven months . . . . Additionally, they involve different locations and victims." *Id*. at ¶ 35. Relying on *Bond*, the Eighth District upheld the imposition of sentence in *Perez*.

{¶72} I find *Bond* and *Perez* persuasive authority to the case at hand, whereas the only authority relied on by the majority, *State v. Miles*, 2020-Ohio-6921 (11th Dist.), is inapposite. In *Miles*, a panel of this court noted that the maximum term imposed under the Reagan Tokes Law is not "offense specific," meaning that the court must aggregate the minimum and definite consecutive terms imposed for each offense to then calculate the maximum term. *Id*. at ¶ 26. The majority extrapolates from *Miles* that because the Reagan Tokes Law is not *offense* specific, it is also not *case* specific. However, *Miles* involved multiple consecutive sentences within a single case, rather than multiple unconsolidated cases. Thus, the majority's application of that opinion is misplaced here.

{¶73} Surely, the majority would agree with this writer that had the trial court in this case held two separate hearings on two different days, the court would not have been required to state the aggregate minimum and maximum sentence for these two unconsolidated cases. And, presumably, the majority would not object had the trial court held two sentencing hearings separated only by enough time for the court to gavel the first hearing concluded and the second hearing commenced. Thus, with this decision,

Case Nos. 2024-L-064, 2024-L-065

the majority creates a new rule that would apply solely when a sentencing court holds a joint sentencing hearing for multiple unconsolidated cases. There is no such requirement in R.C. 2929.144.

{¶74} For these reasons, I respectfully dissent from the majority's opinion on this issue.

Case Nos. 2024-L-064, 2024-L-065

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the judgments of the Lake County Court of Common Pleas are affirmed in part and reversed in part. This matter is remanded for the purposes of a limited resentencing hearing to provide the indefinite sentencing notifications in accordance with R.C. 2929.144(C) and R.C. 2929.19(B)(2)(c) and to reconsider the imposition of a mandatory fine in connection with Possession of Cocaine (Appeal No. 2024-L-065).

Costs to be taxed against the parties equally.

JUDGE SCOTT LYNCH

JUDGE JOHN J. EKLUND,
concurs

JUDGE MATT LYNCH,
concurs in part and dissents in part,
with a Dissenting Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case Nos. 2024-L-064, 2024-L-065